IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| **DAVID LEE ADAMS, JR.,** | ) | Case No. 16-05299-TOM-13 |
| | ) | |
| Debtor. | ) | |

___

## MEMORANDUM OPINION AND ORDER

This case came before the Court on February 21, 2018, for trial[1] on the Objection to Claim (the "Objection") filed by the Debtor objecting to claim 7 filed by the Social Security Administration (the "SSA"). Appearing before the Court were Steven D. Altmann, counsel for the Debtor; Edward Q. Ragland, counsel for the SSA; Amy Morelli, Office of General Counsel for the SSA; Amanda Myers, witness for the SSA; Mary Frances Fallaw, counsel for the Chapter 13 Trustee; and the Debtor, David Lee Adams, Jr. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151, and 157(a) and the District Court's General Order of Reference Dated July 16, 1984, as Amended July 17, 1984.[2] This is a core proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C. § 157(b)(2)(B).[3] This Court has considered the pleadings, arguments of counsel, the testimony of witnesses, the exhibits, and the law, and finds

---

[1] Based on no written objections having been filed and no verbal objections having been voiced at any hearings on this Objection, all parties and their counsel have implied their consent and thus will be deemed to have consented to entry by the Bankruptcy Court of any and all final orders and judgments in this matter.

[2] The General Order of Reference Dated July 16, 1984, As Amended July 17, 1984 issued by the United States District Court for the Northern District of Alabama provides:

> The general order of reference entered July 16, 1984 is hereby amended to add that there be hereby referred to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the Bankruptcy Act.

[3] 28 U.S.C. §157(b)(2)(B) provides as follows:

> (b)(2) Core proceedings include, but are not limited to–
> …
> (B) allowance or disallowance of claims against the estate or exemptions from property of the estate . . .
[.]

and concludes as follows:[4]

## FINDINGS OF FACTS[5]

The Debtor filed his Chapter 13 bankruptcy case on December 27, 2016. On June 26, 2017, the SSA filed a proof of claim in the amount of $71,903.34 for the overpayment of Social Security benefits. On August 14, 2017, the SSA amended the claim to $67,477.45. According to the amended proof of claim, the Debtor received Social Security disability benefits for November 2007 through December 2007, May 2009 through February 2011, July 2011 through November 2011, and January 2012 through November 2014 for a total of $76,635.70. This amount was reduced by $9,158.25, for a total claim of $67,477.45. The proof of claim indicates that the Debtor was not eligible to receive disability benefits for November 2007 through December 2007, May 2009 through July 2010, and as of August 2010, the Debtor was no longer eligible to receive benefits at all. On June 30, 2017, the Debtor objected to the proof of claim on the grounds that he denied receiving benefits in the amount stated on the proof of claim, and that a December 16, 2016 statement from SSA indicated that he owed only $8,972.95.[6] The trial on the objection to claim was conducted on February 21, 2018.

Amanda Myers, Claims Technical Expert for the SSA, testified at the trial regarding the purpose of disability benefits and how eligibility is determined. According to Ms. Myers, disability benefits are intended to replace the income for someone who has an impediment, expected to last more than twelve months or until death, preventing him from engaging in

---

[4] This Memorandum Opinion and Order constitutes findings of facts and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to contested matters in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Bankruptcy Procedure 9014.

[5] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the contents of its own files. *See ITT Rayonier, Inc. v. U.S.*, 651 F.2d 343 (5th Cir. Unit B July 1981); *Florida v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975).

[6] The Debtor's written Objection referenced a December 16, 2016 statement indicating he owed $8,972.95. The statement was not introduced into evidence at trial but is attached to the Objection.

"substantial gainful employment." Ms. Myers explained that substantial gainful activity, or "SGA," is an income limit that a Social Security disability recipient may earn and still qualify to receive benefits. If a person is able to engage in substantial gainful activity earning more than the limit, he is no longer eligible to receive benefits. The IRS determines what is considered substantial gainful activity.

Ms. Myers further explained that there are two ways the SSA may discover that a person is engaging in substantial gainful employment. One way is from "self-reporting" the change, which a Social Security disability recipient is required to do. Another way is by comparing the recipient's W-2 provided by the IRS to Social Security records.

According to Ms. Myers, the Debtor first applied for Social Security disability benefits on May 15, 1993 and benefits were awarded in December 1994 by an administrative law judge. In 2007, the Debtor self-reported to the SSA that he had returned to work. Ms. Myers explained that the SSA performed a "work review" to gather information from the Debtor and his employer. As part of the work review the Debtor completed a "work activity report" to provide more information about the type of work he had been doing and his employer. *See* SSA's Ex. 9. As a result of the work review, the SSA determined that the Debtor had not been eligible for benefits just for the months of November and December 2007; his benefits were not terminated, but deemed "suspended" for those two months. Because this determination was not made until May 2008, the benefits the Debtor received for November and December 2007 were considered to be overpayments. This overpayment was repaid by an offset of benefits in 2008, and thus are not part of either the proof of claim or the Objection.

Ms. Myers testified that in 2010 the SSA received an alert from the IRS that the Debtor

3

was receiving additional income, which triggered another work review.[7] As a result of the review, the SSA determined that the Debtor's payments should have been suspended for the months May 2009 through July 2010, and terminated altogether in August 2010. Ms. Myers explained that the determination was made in February 2011 and the Debtor last received benefits in March 2011. SSA further determined that the Debtor had received overpayments of $21,916.30 up to this point.

Ms. Myers testimony reflects that in May 2011 the Debtor made a request for a waiver of the overpayment he had received. Ms. Myers explained that for the waiver to have been granted the Debtor had to demonstrate that the overpayment was not his fault, and that the he could not afford to repay the overpayment. On July 7, 2011, SSA denied the Debtor's request for a waiver. *See* SSA Ex. 4. Also on that date the Debtor signed a Statement of Claimant or Other Person containing the following paragraph which was also initialed by the Debtor:

> Understanding that this statement is for the use of the Social Security Administration, I hereby certify that –
> I understand that I have been overpaid 21916.30 [sic] in Social Security benefits due to work and earnings. I elect to repay the overpaid money in installments. It would cause a great financial hardship if I am required to repay the full amount at one time. At the present time I am not receiving SSA benefits. I agree to pay $200.00 amonth [sic] until the balance is paid in full.

*Id*.

According to Ms. Myers, in May 2011 the Debtor also applied for an "expedited reinstatement" of his benefits. She explained that a claimant whose benefits had been terminated due to work may request reinstatement if the claimant had to stop working within five years from the termination. One requirement for reinstatement is that the claimant could not be performing SGA during the month of filing the application for reinstatement. Ms. Myers testified that in the Debtor's application he disclosed that he had been working but not over the SGA limit, which she

---

[7] Although the Debtor was obligated to report the income to the SSA, Ms. Myers stated that there is no record that the Debtor did so.

4

stated was $1,000 per month at that time. The application was signed under penalty of perjury. SSA Ex. 3. Ms. Myers explained that in May 2011, while the Debtor's application was being reviewed, he began receiving "provisional payments" conditioned on the final decision on his application. Although provisional payments are supposed to last for only six months, the Debtor received them for seven months. Ms. Myers testified that the Debtor's medical disability was determined by the Disability Determination Services. Thereafter, his reinstatement application was approved and he was awarded benefits in January 2012, with his entitlement beginning in September 2010.

According to Ms. Myers, SSA was alerted by the IRS in the fall of 2014 that the Debtor had received additional income. She explained that another work review was started, and it was determined that, due to the earnings the Debtor made as reported by Professional Transportation, the Debtor had been performing SGA in May 2011. Because of the SSA requirement that a claimant must not have SGA in the month reinstatement was requested, in this case May 2011, it was determined that the Debtor was not eligible for the reinstated benefits that he was awarded. As a result, the Debtor received benefits that he was not entitled to during the months of September 2010 through December 2014, the last month he received benefits. The SSA informed the Debtor of the new determination, and conveyed that if he disagreed with the finding he had a 60-day period to appeal the decision. *See* SSA's Exs. 6 and 7. Ms. Myers testified that the Debtor did not file an appeal.

The Debtor's counsel questioned Ms. Myers about correspondence the Debtor received from SSA in July 2013 indicating that May 2011 was a "trial work month." *See* Debtor's Ex. 6. Ms. Myers explained that in 2014 SSA discovered that an error was made when the Debtor applied for reinstatement of his benefits; instead of being coded as a "reinstatement," the Debtor's application was coded as a new disability which, according to Ms. Myers, has different criteria

5

Case 16-05299-TOM13   Doc 45   Filed 04/09/18   Entered 04/09/18 14:27:15   Desc Main
Document     Page 5 of 13

than that for evaluating eligibility for reinstatement. Ms. Myers explained that when a person is seeking a new period of disability he is afforded "the same luxuries of work and how we look at that. We don't consider him not eligible for payments during what we call the 'trial work period.' He's still eligible to receive payments during that time under a new period of disability." She further explained that when a person files for reinstatement, evaluation is done under different criteria, with the first being "that he not have had SGA in the month of filing." According to Ms. Myers, if the application had been coded correctly the SSA would have realized he was not eligible for benefits in 2013. According to SSA's Exhibit 3, the Debtor was made aware at the time he applied for a reinstatement that he would not receive a new trial work period. The application includes a Statement of Claimant or Other Person explaining that there are advantages and disadvantages of applying for a reinstatement instead of a new disability award:

> . . . I hereby certify that – I understand that I have the option of applying for reinstatement of benefits or applying for a new Disability. I understand that there are advantages and disadvantages to each choice. . . . I also realize that by having my benefit reinstated that I will not be eligible for a new Trial Work Period until 24 months have passed. . . . I realize that by applying for a New Disability . . . I also will qualify for a Trial Work Period under regular rules, unlike the reinstatement provisions which require I serve a 24 month waiting period. . . . Understanding all of my options I elect to apply for _____.

SSA's Ex. 3. The blank had been completed with the words "a reinstatement" and the Statement of Claimant or Other Person had been signed by the Debtor on April 22, 2011. Despite this, the Debtor testified he believed he was in a trial work period beginning in April 2011 when he applied for benefits. According to the Debtor, he received a pamphlet that he understood to say he could work and still receive benefits. He identified SSA's July 2013 letter as the pamphlet he relied on.

Ms. Myers testified that the Debtor received an overpayment of $51,066.90 from September 2010 through December 2014. In addition to the prior overpayment of $21,916.30, the Debtor received a total overpayment of $72,983.20. Ms. Myers further testified that the Debtor

6

had paid $5,040.87 towards the overpayment, leaving a balance of $67,942.33. When asked why that balance was different from the proof of claim amount of $67,477.45, Ms. Myers explained that she had spent between 25 to 30 hours reviewing the Debtor's records, which was one of the most difficult she had ever reviewed due to the length of the record and the different periods of time involved, and could not determine why the proof of claim amount differed. According to her testimony, several sources are reviewed for the purpose of filing a proof of claim and from the review a "paid versus payable" worksheet is produced to show what was paid out and what was actually due. Ms. Myers stated that she reviewed the worksheet to check for errors but did not find any. She believes that the amount the Debtor owes is more than the $67,477.45 reflected in the proof of claim but $67,477.45 is all SSA is seeking from him.

Ms. Myers was asked about the proof of claim filed by SSA in the Debtor's 2012 bankruptcy case by SSA in the amount of $12,696.70, instead of the entire overpayment amount assessed at that time of $21,916.20. Ms. Myers explained that the overpayment had been reduced by roughly $10,000 from the retroactive benefits the Debtor was awarded due to the reinstatement.

Ms. Myers was also asked about a SSA Billing Statement dated August 29, 2016. The Billing Statement shows in part:

| | |
|---|---|
| Balance from previous statement | $68,941.29 |
| Payment received – 08/25/16 – thank you | $100.00 |
| Payment received – 05/13/16 – thank you | $304.46 |
| Change in balance – decrease | $59,608.28 |
| New balance | $9,233.01 |

Debtor's Ex. 9. Ms. Myers stated that there is no record in SSA's system that indicates the balance due from the Debtor on the overpayment had been reduced. It is her belief that the reduction of $59,608.28 was due to an administrative error.

On cross-examination counsel for the Debtor questioned Ms. Myers about the date of the Debtor's request for expedited benefits. Counsel noted that the application was signed on April

7

22, 2011 and asked why May 2011, not April 2011, was the month in which SSA determined that the Debtor filed his application. Ms. Myers explained that an application is not considered to be completed until all needed information has been collected; in this instance, the last piece of evidence that SSA received was a Work Activity Report signed by the Debtor on May 2, 2011. SSA's Ex. 3. Ms. Myers stated that even if April 2011 had been considered the month that the Debtor made his request the outcome would have been the same because the Debtor had SGA in April 2011 due to his total earnings reported by Professional Transportation and Nadia, Inc.[8] SSA's Ex. 9.

According to the Debtor's testimony, he does not dispute that he owes money to SSA but he believes that the amount owed is closer to $8,000 according to correspondence he received from SSA. *See* Ex. A of the Debtor's Objection to Claim, SSA Billing Statement dated December 16, 2016. The Debtor admitted that he has not paid over $59,000 to SSA, and that he does not know why SSA sent him a statement showing his balance had been reduced by that amount. *See* Debtor's Ex. 7.[9] The Debtor was not asked if he contacted the SSA to inquire about the reduction.

According to the Debtor, he worked for Professional Transportation as a cab driver, paying $85 per day to lease a cab and paying for his own fuel. He claimed that as a result he netted less than $800 per month, and thus the income information SSA from Professional Transportation was

---

[8] Included in this Work Activity Report are three pages of employment records showing the Debtor's work activity in 2011. *See* SSA's Ex. 9. At the top of the one page, the employer is identified as "Professional Transportation" but signed by the president of "Wallace Excavating, Inc." Per this record, the Debtor had no earnings in April or May 2011. Counsel for SSA asked Ms. Myers about the two employers on this record, and Ms. Myers testified that when SSA received the inconsistent information it sent another request. According to Ms. Myers the response they received identified the employer as "Professional Transportation" at the top of the page, and the page was signed by a representative of "Professional Transportation, Inc." Per this record, the Debtor earned $853.92 in April and nothing in May. The third employment record referring to 2011 identified the employer as "Nadia, Inc." and was signed by a representative of "Nadia, Inc. d/b/a Industrial Staffing of AL." According to this record, the Debtor received earnings in the amount of $790.50 in April and $1,270.00 in May.

[9] The SSA Billing Statement dated August 29, 2016 reflects that the amount owed by the Debtor was reduced by $59,608.28, leaving a balance of $9,233.01. Exhibit A to the Debtor's Objection to Claim is a SSA Billing Statement dated December 16, 2016, reflecting a balance owed of $8,972.95.

8

not an accurate statement of what he received. The Debtor stated that he received money directly from his customers and did not receive any money from Professional Transportation. Although the Debtor did not directly testify that he was self-employed while working for Professional Transportation, the Debtor's counsel questioned Ms. Myers regarding income received from an employer versus income received from self-employment. Ms. Myers indicated that if a claimant is self-employed the claimant's net income would be different than if the claimant were employed because the self-employed claimant may take out certain expenses. Ms. Myers, addressing the Debtor's work with Professional Transportation, stated that the information SSA received from Professional Transportation showed that Social Security tax had been withheld from the Debtor's earnings, indicating he was a W-2 employee and not self-employed.[10] She could not say for certain whether considering the Debtor to have been self-employed rather than employed would have made a difference. The Debtor did not produce any records or evidence other than his testimony regarding his lease of a cab, his fuel expenses, or any other details of his arrangement with Professional Transportation.

## CONCLUSIONS OF LAW

Section 501(a) of the Bankruptcy Code provides that a creditor may file a proof of claim. 11 U.S.C. § 501(a). A filed proof of claim is deemed allowed unless a party in interest objects to it. 11 U.S.C. § 502(a). Section 502(b) of the Bankruptcy Code provides that "if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim . . . and shall allow such claim in such amount except to the extent" that one of the nine exceptions to allowance under Section 502(b) applies. 11 U.S.C. § 502(b). In the event a proof of claim is filed in accordance with the Bankruptcy Rules, it "shall constitute prima facie evidence of the

---

[10] Ms. Myers testified that SSA's analysis of self-employment income was different than that of someone employed by another.

9

validity and amount of the claim." Fed. R. Bankr. P. 3001(f). If a party in interest objects to a claim that was filed in accordance with the Bankruptcy Rules, then the objection "must 'contain some substantial factual basis to support its allegation of impropriety'" in order to "'overcome the [creditor's] prima facie case.'" *Bagget Bros. Farm, Inc. v. Altha Farmers Coop., Inc. (In re Baggett Bros. Farm, Inc.)*, 315 Fed. App'x. 840, 843 (11th Cir. 2009) (quoting *Matter of Mobile Steel Co.*, 563 F. 2d 692, 701 (5th Cir. 1977); *Matter of Multiponics, Inc.*, 622 F. 2d 709, 714 (5th Cir. 1980)). "The objecting party has the burden of going forward with evidence supporting the objection. Such evidence must be of probative force equal to that of the allegations contained in the proof of claim." *In re Broadband Wireless Intern. Corp.*, 295 B.R. 140, 145 (10th Cir. B.A.P. 2003) (citing *Abboud v. Abboud*, 232 B.R. 793, 796 (Bankr. N.D. Okla. 1999), *aff'd*, 237 B.R. 777 (10th Cir. B.A.P. 1999)). Should the objecting party satisfy this burden, "the burden then shifts back to the creditor 'to prove the validity of the claim by a preponderance of the evidence.'" *Baggett Bros. Farm*, 315 Fed. App'x. at 843 (quoting 4 *Collier on Bankruptcy* ¶ 502.02[3][f] (15th ed. rev. 2007)).

Per Bankruptcy Rule 3001(f), SSA's amended proof of claim is presumptively valid in the amount of the claim, $67,477.45. The Debtor's Objection to the claim will overcome the presumption of validity only if he establishes a "substantial factual basis" to support it. In his written Objection, the Debtor asserted that has not received benefits in the amount that SSA seeks, and that he only owes $8,972.95 according to SSA's December 16, 2016 statement.[11]

At trial, the Debtor made no arguments and presented no evidence that he has not received the amount of benefits that SSA alleges. The Debtor in effect objects on the ground that the SSA incorrectly determined he had substantial gainful employment in the month he applied for

---

[11] *See supra* note 6.

10

Case 16-05299-TOM13    Doc 45    Filed 04/09/18    Entered 04/09/18 14:27:15    Desc Main
Document      Page 10 of 13

reinstated benefits. The Debtor's' argument is two-fold: first, SSA wrongly considered May 2011, instead of April 2011, as the month he applied he applied for reinstated benefits, and second, that the income he received in May 2011 should not have been considered in determining his eligibility.

The Debtor contended that April 2011 should have been considered the month he applied for benefits since that was the month in which he signed his application. Ms. Myers testified that an application is not considered to be complete until the last piece of needed evidence is received, which in this case was May 2011. The Debtor presented no authority indicating that the month of signing the application should have been used to determine his eligibility for benefits. According to Ms. Myers, it would not have mattered anyway if April 2011 had been considered the relevant month because the Debtor had SGA in that month as well. Ms. Myers testified that according to the records SSA received from Professional Transportation and Nadia, the Debtor's combined earnings from both companies exceeded the $1,000 per month income limit in April 2011.[12] The Debtor testified that the records from Professional Transportation did not accurately reflect his earnings, as he had to pay for the lease of a cab and his fuel. However, the Debtor did not testify or present any other evidence as to how much he actually received from the Professional Transportation job. Nor did the Debtor provide any estimates of his earnings – he did not explain how many days per month that he worked, how much he typically paid for fuel, or the amount of money that he typically took in from his customers per day. The Debtor's counsel argued that the Debtor had been self-employed instead of an employee at Professional Transportation, but again no evidence was presented to support this contention. Regardless, Ms. Myers's unrebutted testimony established that May 2011 was the relevant month for determining the Debtor's entitlement to benefits.

---

[12] As previously mentioned, no income from Professional Transportation was reported for May 2011. *See supra* note 8.

11

In addition to the Debtor's argument that he did not have SGA in May 2011, the Debtor asserts that his income that month should not have been considered in the first place because he believed he was within a "trial work period" at that time.

> The Social Security Act provides that a disabled individual may attempt to return to work on a trial basis without losing his or her disability status. This trial work period enables the recipient to try to work without immediately risking the complete cessation of benefits if the trial is unsuccessful. The trial work period thus furthers Congress's goal of rehabilitating disability recipients "into productive activity."

Carolyn A. Kubitschek & Jon C. Dubin, Soc. Sec. Disability Law & Procedure in Fed. Court § 2:7 (2017). Thus, if the Debtor had been in a trial work period during May 2011 the fact that he had SGA that month would not have mattered. However, the Debtor had no legitimate basis for his belief. The Statement of Claimant or Other Person that he signed on April 22, 2011 was clear that by choosing to apply for reinstatement instead of a new disability claim he would "not be eligible for a new Trial Work Period until 24 months have passed." Furthermore, the July 2013 letter incorrectly informing him that May 2011 was considered a trial work month was not written until over two years from the time he applied for a reinstatement, so any reliance by the Debtor on that letter is misplaced. Logically, the Debtor could not have relied on that letter while he earned over the SGA limit in May 2011. Had the Debtor believed that the 2014 SSA decision that he was not entitled to benefits was in error for whatever reason, he had a 60-day period in which he could have appealed the decision. Ms. Myers testified that the Debtor did not file an appeal, and the Debtor did not dispute this nor did he argue that he had a reason for not doing so.

The Debtor testified that he believed he only owes approximately $8,000 based on correspondence from the SSA.[13] However, Ms. Myers testified that she could not determine why the Debtor received the August 29, 2016 Billing Statement showing a reduction of over $59,000

---

[13] *See* Note 9, infra.

12

on the balance owed by the Debtor, and that SSA's records did not indicate a reduction of the Debtor's balance. According to the Debtor he did not pay over $59,000 to the SSA and he does not know why he received a statement showing the balance owed was reduced. It is unknown whether or not the Debtor contacted the SSA to determine what happened, but regardless, the Debtor should not be allowed to benefit from a mistake by the SSA, especially when the Debtor had no reason to believe that he was entitled to such a large reduction.

The Debtor, as the objecting party, has the burden of presenting evidence to overcome the presumption of validity afforded SSA's proof of claim. The Debtor has presented arguments that he believes the SSA should not have determined that May 2011 was the month he applied for reinstated benefits, that he believed in May 2011 that he was in a trial work period and thus his income did not matter, that he believes Professional Transportation reported his income incorrectly since he had to pay rental fees for his cab and for gas, and that he believes he owes approximately $8,000. In addition to his testimony, the Debtor has offered only one letter reflecting that May 2011 was a trial work month and one statement indicating a balance owed of approximately $8,000, both of which Ms. Myers testified were sent in error. This Court cannot conclude that the Debtor's beliefs rise to the level of "substantial factual basis" sufficient to overcome the presumption of validity. The Debtor's Objection to Claim is due to be overruled.

It is therefore **ORDERED, ADJUDGED, and DECREED** that the Debtor's Objection to the claim of the Social Security Administration is **OVERRULED**.

Dated: April 9, 2018  /s/ Tamara O. Mitchell
TAMARA O. MITCHELL
United States Bankruptcy Judge

13

Case 16-05299-TOM13    Doc 45    Filed 04/09/18    Entered 04/09/18 14:27:15    Desc Main
Document    Page 13 of 13